IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Kelly Foust, | Case No. 1:06 CV 2625 |
| Petitioner, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Marc Houk, | |
| Respondent. | |

This matter is before the Court on Petitioner Kelly Foust's ("Foust") Motions to Conduct Discovery and for Allocation of Funds for Expert Assistance (Doc. Nos. 32-33). In addition to his briefs in support of his Motions, the Court has considered Respondent Marc Houk's ("Houk") Opposition briefs (Doc. Nos. 35-36) and Foust's Replies in support of his Motions (Doc. Nos. 38- 39). For the following reasons, Foust's Motions are denied.

**FACTS**

During the early morning of March 31, 2001, Foust broke into the home of 54-year-old Jose Coreano in Cleveland. Foust entered Jose's first-floor bedroom and killed him with a hammer blow to the head. Foust then went upstairs and repeatedly raped Jose's 17-year-old daughter, Demaris Coreano. After stealing items from the house, Foust tied Demaris to the bathtub and set the house on fire; despite her situation, Demaris managed to escape.

After trial before a three-judge panel in December 2001, Foust was convicted of aggravated murder, kidnaping, rape, gross sexual imposition, attempted murder, aggravated burglary, aggravated robbery, and aggravated arson. On January 11, 2002, the same panel found Foust's aggravating circumstances outweighed the mitigating factors and returned a sentencing verdict of death. Foust

filed a timely Notice of Appeal to the Ohio Supreme Court, and on December 29, 2004 the Court affirmed the decision of the trial court. Foust also filed for post conviction relief which was denied by the trial court. Appeals to the state appellate court and supreme court affirmed the denial of relief. Foust filed a Petition for Writ of Certiorari to the United States Supreme Court which was denied on October 2, 2006. Foust also filed an Application for Reopening with the Ohio Supreme Court which was denied. On March 22, 2007, Foust filed a Petition for Habeas Corpus in this Court.

## DISCOVERY IN FEDERAL HABEAS ACTIONS

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Nevertheless, the All Writs Act, 28 U.S.C. § 1651, gives federal courts the power to "fashion appropriate modes of procedure," including discovery, to dispose of habeas petitions "as law and justice require." *Id.* A habeas petitioner's discovery request is governed by the Rules Governing Section 2254 Cases in the United States District Courts. Rule 6(a) sets forth a two-pronged standard.

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for **good cause shown** grants leave to do so, but not otherwise. (emphasis added)

Good cause exists where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. *Harris v. Nelson,* 394 U.S. 286, 300 (1969); *Williams v. Bagley,* 380 F.3d 932, 974 (6th Cir. 2004); *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001). The additional discovery need only show good cause that the evidence sought would lead to relevant evidence. *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) (citing *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.,* 98 F.3d 1102, 1106 (9th Cir. 1996)); *see Keenan v. Bagley*, 262 F. Supp. 2d 826, 838 (N.D. Ohio 2003), *vacated on other*

2

*grounds*, 400 F.3d 417 (6th Cir. 2005). Vague and conclusory allegations are not sufficient to allow discovery under Rule 6 and a petitioner may not embark on a fishing expedition in order to develop claims for which there is no factual basis. *Williams*, 380 F.3d at 974.

## MERITS OF FOUST'S CLAIMS FOR DISCOVERY

### A. Trial Counsel and Experts

Foust asserts that he was denied effective assistance of counsel because of counsel's failure to hire experts in the fields of arson investigation, DNA analysis, false confessions, forensic pathology and mitigation investigation. Further, he argues his counsel was ineffective in hiring the psychologist to evaluate Foust's competency to stand trial, as to his sanity at the time of the offense, and to investigate and prepare mitigation.

In order to determine whether Foust is entitled to conduct further discovery with respect to this claim, the Court must consider the elements of ineffective assistance of counsel. The standard for reviewing a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *Strickland* sets forth the following two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. A deficient performance occurs when counsel's representation falls below an objective standard of reasonableness. *Id.* at 688; *Hicks v. Collins*, 384 F.3d 204, 213 (6th Cir. 2004), *cert. denied*, 544 U.S. 1037 (2005); *Wickline v. Mitchell*, 319 F.3d 813, 819 (6th Cir. 2003). Prejudice is established by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is defined as

3

a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694; *Wickline,* 319 F.3d at 819. Judicial scrutiny of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689; *Alder v. Burt,* 240 F. Supp. 2d 651, 672 (E.D. Mich. 2003). "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

Foust requests permission to take the depositions of trial counsel and the psychologist. Also, he desires the production of any and all records reflecting counsel's attendance at capital defense seminars, and compliance with requirements for certification to be appointed as counsel for indigent defendants in death penalty cases.[1]

The affidavit of Dr. James Karpawich, a clinical psychologist, was submitted during Foust's post-conviction proceedings (Apx. Vol. 4, pp. 246-51). In his affidavit, Dr. Karpawich comments on defense counsel's several alleged failures. Thus, the information that Defendant now seeks to elicit is already before this Court from Dr. Karpawich's deposition.

Discovery regarding the hiring of a DNA expert, an arson investigator and a forensic pathologist would not aid Foust's ineffective assistance of counsel claim. Foust confessed to the crimes. The victim (of the rape, gross sexual imposition, and kidnapping) knew Foust and testified at his trial. There is no doubt that these crimes occurred. His confession and the eyewitness testimony likely resulted in his conviction, not DNA testimony or testimony with regard to the start of the fire.

---

[1] Respondent contends that discovery is inappropriate as to issues that were procedurally defaulted. Nonetheless, the Court will review the merits of each claim for purposes of judicial economy and appellate review regardless of whether the claim is procedurally defaulted.

4

Hiring of a false confession expert also would not help as to the ineffective assistance of counsel claim because that issue depends on whether the *Miranda* warnings were defective.

Foust alleges that trial counsel was ineffective for failing to make certain objections, failing to call specific witnesses and failing to ask or not ask certain questions on cross-examination. He complains that on cross-examination, his counsel elicited testimony concerning other acts that Foust had committed. Usually, decisions concerning whether to cross-exam and to what extent are matters of trial strategy and will not support an ineffective assistance of counsel claim. *Davie v. Mitchell,* 291 F. Supp. 2d 573, 604 (N.D. Ohio 2003) (citing *Dunham v. Travis,* 313 F.3d 724, 732 (2d Cir. 2002)). Furthermore, the case was tried before a three-judge panel who would not be influenced by inconsequential or nonreponsive comments from a witness.

Foust also contends in his Petition that his trial counsel should have objected to the DNA expert's analysis. The Court finds any objection to her qualifications would have been futile. The expert had a bachelor of science degree in biology, a master's degree in zoology, and a Ph.D in anatomy and cell biology. She also received six months of training on the various testing procedures involving DNA analysis and, as noted by the Ohio court, testified as a DNA expert in other cases.

Foust further asserts that trial counsel should have objected when the expert testified that she did not actually perform the DNA testing herself. However, if there had been an objection, the prosecutor would have called the DNA analyst whose testimony would have been more detailed, thereby bolstering the State's case. Defense counsel's failure to object can be considered a tactical decision.

Foust then contends that trial counsel should have challenged the expert's conclusion that blood on the murder weapon handle matched Foust's DNA. Under Ohio law, reliability of DNA

5

evidence and the statistics on population frequency go to the weight of the evidence. *State v. Pierce,* 64 Ohio St. 3d 490 (1992). The Ohio Supreme Court also found that a witness can testify to statistical conclusions about DNA evidence without being an expert in statistical analysis. *State v. Foust*, 105 Ohio St. 3d 137, 152 (2004). Therefore, any challenge would have been without merit and again can be considered a tactical decision by defense counsel.

Next, Foust argues that trial counsel should have challenged the constitutionality of Ohio Revised Code § 2901.21(C), which provides that intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense. In *Montana v. Egelhoff*, 518 U.S. 37, 56 (1996), the United States Supreme Court held that a criminal defendant is not constitutionally entitled to a voluntary intoxication defense. *See Smith v. Bradshaw,* No. 1:04 CV 694, 2007 WL 2840379, *11 (N.D. Ohio Sep. 27, 2007). Therefore, a challenge of the constitutionality of this statute would have been futile.

Finally, discovery as to the mitigation phase of the trial would not have aided the claim of ineffective assistance of counsel. Three family members testified. They presented a full picture of Foust, including his dysfunctional family and significant history of abuse by his father. The trial court noted that the Cuyahoga County Children's Services records were not necessary. The "truly grisly picture" of Foust's home was "painted vividly" by the testimony received at trial (Apx. Vol. 5, pp. 358-59). The court found that it had ample documentation and evidence of Foust's background so that further records would have been cumulative and, therefore, would not have made a difference in the court's conclusion. *Id.* at 357-59.

6

### B. Records for Attending Seminars and Certification

Foust requests records reflecting trial counsel's attendance at capital defense seminars and compliance with certification to be appointed counsel on death penalty cases. The Court finds that failure to attend death penalty seminars or lack of certification would not prove ineffective assistance of counsel. Counsel can attend death penalty seminars and obtain death penalty certification and still be ineffective. There is no direct relationship between attendance or certification and effectiveness.

The Court finds Foust has not shown discovery might result in evidence enabling him to prevail on his ineffective assistance of counsel claims.

## ALLOCATION OF FUNDS FOR EXPERTS

Foust requests funds for the assistance of experts in the fields of arson investigation, DNA analysis, false confessions, forensic pathology and mitigation investigation. In a capital case, an individual seeking a writ of habeas corpus to vacate a state court conviction is entitled to expert assistance. 18 U.S.C. § 3599 (a)(2). In order to receive funds to hire an expert, the petitioner must show that the expert's services are reasonably necessary for his or her representation. 18 U.S.C. § 3559(f).

Although there are few cases defining when appointment of experts is "reasonably necessary," the request must elucidate some factual allegation of a claim yet unexplored. *Lawson v. Dixon*, 3 F.3d 743, 753 (4th Cir. 1993). "Expert services are 'reasonably necessary' when 'a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance.'" *Powell v. Kelly*, 492 F. Supp. 2d 552, 557 (E.D.Va. 2007) (quoting *Wright v. Angelone*, 151 F.3d 151, 163 (4th Cir.1998)). "Further, 'expert services are not reasonably necessary if the record, viewed in light of the forecasted evidence, would

not entitle the petitioner to an evidentiary hearing on his claims, or if the petitioner would not be able to win on the merits regardless of the expert's findings.'" *Id.* (quoting *Bell v. True,* 366 F. Supp. 2d 403, 405 (W.D.Va. 2005)).

The Court finds discovery relating to these experts unnecessary. No substantial question exists over an issue requiring expert testimony. Therefore, funds to hire these experts is not allowed.

## CONCLUSION

Foust's Motions to Conduct Discovery and for Allocation of Funds for Experts are denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

January 15, 2008